UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

DASHANTE SCOTT JONES,    :
 *Plaintiff*,        :
            :
 v.          :   Case No. 3:22-cv-1512 (SVN)
            :
SCHORTMAN *et al.*,     :
 *Defendants*.      :

**<u>INITIAL REVIEW ORDER</u>**

Plaintiff, Dashante Scott Jones, a sentenced inmate in the custody of the Connecticut Department of Correction ("DOC"), has filed a *pro se* complaint pursuant to 42 U.S.C. § 1983. The complaint brings claims against four DOC employees:  Officer Schortman,[1] Officer Harris, Lieutenant Davis, and District Administrator Guadarrama.  Compl., ECF No. 1.

The Prison Litigation Reform Act requires that federal courts review complaints brought by prisoners seeking relief against a governmental entity or an officer or employee of a governmental entity.  28 U.S.C. § 1915A(a).  Upon review, the Court must dismiss the complaint, or any portion of the complaint, that is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. §§ 1915(e)(2)(B), 1915A(b).

---

[1] Although an attachment to Plaintiff's complaint suggests that Officer Schortman's name is spelled "Shortman," ECF No. 1 at 18, the Court will refer to this Defendant as "Officer Schortman," which is the spelling Plaintiff consistently uses throughout the body of his complaint.

The Court has thoroughly reviewed all factual allegations in the complaint and conducted an initial review pursuant to 28 U.S.C. § 1915A.[2]  Based on this initial review, the Court orders as follows.

## I.      FACTUAL BACKGROUND

Plaintiff's factual allegations are, at times, difficult to follow.   Thus, the Court's interpretation of the complaint may differ in some respects from what Plaintiff intended to convey. When conducting an initial review pursuant to 28 U.S.C. § 1915A(b), the Court "must accept as true all factual matters alleged in a complaint." *Dehany v. Chagnon*, No. 3:17-cv-00308 (JAM), 2017 WL 2661624, at *3 (D. Conn. June 20, 2017).

In 2022, Plaintiff was incarcerated as a sentenced inmate at the MacDougall-Walker Correctional Institution ("Walker").   Compl. at 2.   At that time, Plaintiff suffered from chronic arthritis and, therefore, made frequent use of a wheelchair and a walker.   *Id.* at 8.

During his stay at Walker, Plaintiff developed a poor relationship with Officer Schortman. *Id.* at 7.   Officer Schortman disliked Plaintiff because Plaintiff had filed grievances and lawsuits against Schortman's co-workers and because Schortman suspected Plaintiff of faking or exaggerating a disability.   *Id.* at 5, 7–8.   Plaintiff alleges that Officer Schortman frequently denied him access to his wheelchair and walker and called him racial slurs.   *Id.* at 5, 7–8.

---

[2] It is well-established that "*[p]ro se* complaints 'must be construed liberally and interpreted to raise the strongest arguments that they suggest.'"   *Sykes v. Bank of Am.*, 723 F.3d 399, 403 (2d Cir. 2013) (quoting *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006)); *see also Tracy v. Freshwater*, 623 F.3d 90, 101–02 (2d Cir. 2010) (discussing special rules of solicitude for *pro se* litigants).   Notwithstanding this liberal interpretation, however, a *pro se* complaint will not survive dismissal unless the factual allegations meet the plausibility standard.   *See, e.g.*, *Fowlkes v. Ironworkers Loc. 40*, 790 F.3d 378, 387 (2d Cir. 2015).   "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks and citations omitted).   A complaint that includes only "'labels and conclusions,' 'a formulaic recitation of the elements of a cause of action' or 'naked assertion[s]' devoid of 'further factual enhancement,'" does not meet the facial plausibility standard.   *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 557 (2007)).

On August 20, 2022, Plaintiff asked Officer Schortman to obtain his wheelchair so that he could attend recreation.  *Id.* at 5.  Officer Schortman responded that he did not "care about [Plaintiff's] fake handicap," and refused to do so.  *Id.*  Officer Schortman further stated that Plaintiff could crawl to recreation.  *Id.*  Plaintiff protested that Officer Schortman was violating his rights under the Americans with Disabilities Act ("ADA"), but Officer Schortman was unmoved by these protestations.  *Id.*

Plaintiff returned to his cell and covered his cell window.  *Id.* at 6.  By engaging in this conduct (a disciplinary infraction), Plaintiff hoped to attract the presence of a supervisor with whom he could discuss his need for a wheelchair.  *Id.*  Officer Schortman, however, instructed his co-workers to ignore Plaintiff's disciplinary infraction.  *Id.*

In a further attempt to engage in conduct that would attract the presence of a supervisory officer, Plaintiff threw milk out of his cell window into a common area.  *Id.*  Immediately thereafter, Plaintiff heard Officer Schortman remark that he should walk toward the spilled liquid and claim that Plaintiff had tried to assault him.  *Id.*  Officer Schortman then did just that.  *Id.*

When supervisory officers arrived to investigate the incident, Plaintiff attempted to explain that he had not been aiming for Officer Schortman when he threw milk from his cell window.  *Id.*  Supervisory officials, however, appear not to have believed Plaintiff and, thus, ordered his placement in four-point in-cell restraints.  *Id.*  Plaintiff does not indicate how long he was restrained but does assert that the restraint was painful due to his persistent medical conditions and a recent acute elbow injury.  *Id.* at 6–8, 12.

Officer Schortman's allegations against Plaintiff also resulted in a disciplinary investigation.  *Id.* at 9.  Officer Harris led this investigation and, ultimately, issued Plaintiff a ticket for an attempted assault.  *Id.*  During his investigation, Officer Harris allegedly asked Officer

Schortman what he should say in his disciplinary report, as he saw no attempted assault in his review of video evidence. *Id.* Unbeknownst to Officer Harris, Plaintiff was within earshot when he made this remark. *Id.* Because Plaintiff was upset by Officer Harris' comment, a heated argument ensued between the two. *Id.*

Plaintiff appears to allege that, in a witness statement, it was asserted that Officer Schortman referred to Plaintiff as a "nigger." *Id.* at 9–10. Officer Harris allegedly modified the witness statement to assert that Officer Schortman had referred to Plaintiff as a "cracker." *Id.* Officer Harris allegedly did this to avoid offending the disciplinary hearing officer, Lieutenant Davis, who happened to be African American. *Id.* at 9.

At a disciplinary hearing over which Lieutenant Davis presided, Officer Harris presented a written synopsis of the video showing Plaintiff throwing milk from his cell window. *Id.* at 10, 18. Plaintiff asked to present the actual video (rather than Officer Harris' summary of the video), but this request was denied. *Id.* at 10. Plaintiff also objected that his appointed disciplinary proceeding advocate was not present at his disciplinary hearing. *Id.* at 10, 17. Further, Plaintiff alleged the hearing was held thirty days late. *Id.* at 10.

Over Plaintiff's objections, Lieutenant Davis found Plaintiff guilty of attempted assault. *Id.* The complaint, and its attached exhibits, do not indicate what punishment Lieutenant Davis ultimately imposed on Plaintiff. When Plaintiff told Lieutenant Davis that he would file suit against Davis and Officer Harris, Davis directed Harris to write Plaintiff a ticket for making a threat. *Id.*

On September 23, 2022, Plaintiff administratively appealed Lieutenant Davis' finding of guilt. *Id.* at 10, 16–17. District Administrator Guadarrama later found that "no serious due-process

failure occurred" in the resolution of Plaintiff's disciplinary case and, thus, affirmed Lieutenant Davis' finding of guilt. *Id.* at 10, 16, 18.

## III.   DISCUSSION

In his complaint, Plaintiff expresses an intent to bring a variety of federal and state tort claims against Officer Schortman, Officer Harris, Lieutenant Davis, and District Administrator Guadarrama.  The Court now evaluates whether these claims are cognizable.

### A.   Claims Against Officer Schortman

The Court construes Plaintiff's complaint to bring the following claims against Officer Schortman:  (1) a First Amendment retaliation claim; (2) an ADA and Rehabilitation Act claim; (3) an Eighth Amendment excessive force claim; (4) an Eighth Amendment deliberate indifference claim; (5) a Fourteenth Amendment equal protection claim; (6) claims asserting violations of state criminal statutes; (7) claims asserting violations of state civil statutes; and (8) a state law defamation claim.  Compl. at 7–9.

(1)   For purposes of initial review, Plaintiff has adequately stated a claim against Officer Schortman for First Amendment retaliation.  Plaintiff's retaliation claim may proceed against Officer Schortman in his individual capacity on the theory that Officer Schortman brought a false disciplinary complaint against Plaintiff in retaliation for Plaintiff's acts of filing grievances and/or lawsuits against Officer Schortman's co-workers.  *See Davis v. Goord*, 320 F.3d 346, 352–53 (2d Cir. 2003) ("[T]he filing of prison grievances is a constitutionally protected activity . . . ."); *see also Willey v. Kirkpatrick*, 801 F.3d 51, 63 (2d Cir. 2015) (a plaintiff may plead a cognizable section 1983 claim by alleging that a correctional officer brought a false disciplinary report "in retaliation for" the exercise of "a constitutionally protected right" (internal quotation marks and citation omitted)).

(2)      Additionally, Plaintiff's ADA/Rehabilitation Act claim may proceed against Officer Schortman in his official capacity[3] on the theory that Plaintiff is a qualified individual with a disability and that Officer Schortman denied Plaintiff an opportunity to participate in recreation because of Plaintiff's disability.  *See Wright v. N.Y. State Dep't. of Corr.*, 831 F.3d 64, 72 (2d Cir. 2016) (finding that to establish an ADA or Rehabilitation Act claim a prisoner must show that he or she is a qualified individual with a disability and that he or she was denied an opportunity to participate in a service, program, or activity by reason of his or her disability).

(3) & (4)   Plaintiff's Eighth Amendment claims appear to be premised on a theory that Officer Schortman set events in motion that resulted in Plaintiff being placed in four-point restraints that caused Plaintiff pain.  With respect to excessive force claims, the Eighth Amendment protects against punishments that "involve the unnecessary and wanton infliction of pain."  *Gregg v. Georgia*, 428 U.S. 153, 173 (1976).   An inmate alleging excessive force in violation of the Eighth Amendment has the burden of establishing both objective and subjective components to his claim.  *Sims v. Artuz*, 230 F.3d 14, 20–21 (2d Cir. 2000).   "When reviewing the use of restraints under the Eighth Amendment, the court must consider the individual circumstances surrounding the use of restraints, including the length of time restraints were imposed and the objective sought to be served."  *Alston v. Butkiewicus*, No. 3:09-CV-207 (CSH), 2012 WL 6093887, at *11 (D.

---

[3] In his complaint, Plaintiff exclusively seeks monetary damages.  Compl. at 6.  The ADA and Rehabilitation Act do not permit individual capacity suits for damages against state officials.  *See Garcia v. S.U.N.Y. Health Scis. Ctr. of Brooklyn*, 280 F.3d 98, 107 (2d Cir. 2001).  As to official capacity claims, the Court is aware that it is presently unsettled in the Second Circuit whether a plaintiff may assert a Title II ADA damages claim against a state actor in his or her official capacity and, if so, under what circumstances such a claim can be maintained.  *See Dean v. Univ. at Buffalo Sch. of Med. & Biomedical Scis.*, 804 F.3d 178, 193–95 (2d Cir. 2015) (recognizing uncertainty, after the decision in *United States v. Georgia*, 546 U.S. 151 (2006), about the extent to which Congress validly abrogated state sovereign immunity under Title II and about the continuing validity of the Second Circuit's decision in *Garcia*, 280 F.3d at 111–12, on this issue).  Due to this uncertainty, any decision about whether sovereign immunity bars Plaintiff's ADA and Rehabilitation Act claims against Officer Schortman in his official capacity should be determined after operation of the adversarial process.  Thus, if Officer Schortman believes such claims to be prohibited, he is encouraged to file a motion to dismiss presenting this argument.

Conn. Dec. 7, 2012).   Because "[m]aintaining order and security in a prison is a legitimate penological objective[,] . . . the use of restraints that are reasonably related to maintaining prison order and security, without more, does not violate the Eighth Amendment."   *Shehan v. Erfe*, No. 3:15-cv-1315 (MPS), 2017 WL 53691, at *9 (D. Conn. Jan. 4, 2017); *see also Caballero v. Lantz*, No. 3:05-cv-140 (CFD), 2008 WL 638397, at *3 (D. Conn. Mar. 5, 2008) ("The use of in-cell restraints in prisons is not prohibited by the Eighth Amendment and is certainly justified under many circumstances.").

Similarly, with respect to an Eighth Amendment deliberate indifference claim, a plaintiff must allege that:   "(1) objectively, the deprivation the inmate suffered was 'sufficiently serious that he was denied the minimal civilized measure of life's necessities,' and (2) subjectively, the defendant official acted with 'a sufficiently culpable state of mind . . . , such as deliberate indifference to inmate health or safety.'"   *Walker v. Schult*, 717 F.3d 119, 125 (2d Cir. 2013) (alteration in original) (quoting *Gaston v. Coughlin*, 249 F.3d 156, 164 (2d Cir. 2001)).

Here, Plaintiff's Eighth Amendment claims fail at the threshold because he has not alleged *who* ordered him to be placed in four-point restraints.   Specifically, Plaintiff does not allege that Officer Schortman ordered his four-point restraints or that Officer Schortman had any control over whether or how he was restrained.   Thus, Plaintiff has not alleged that Officer Schortman was personally involved in any alleged violation of Plaintiff's Eighth Amendment rights.   For this reason, Plaintiff will not be permitted to proceed on any Eighth Amendment claims against Officer

Schortman.[4]  *See Iqbal*, 556 U.S. at 676 ("[A] plaintiff must plead that each Government-official defendant, through the official's own individual action, has violated the Constitution.").

(5)     The Court also construes Plaintiff's complaint as attempting to allege a Fourteenth Amendment equal protection claim.  The Fourteenth Amendment's equal protection clause mandates equal treatment under the law.  U.S. Const. amend. XIV.  "To prove an equal protection violation, [a plaintiff] must prove purposeful discrimination, . . . directed at an identifiable or suspect class."  *Giano v. Senkowski*, 54 F.3d 1050, 1057 (2d Cir. 1995).  Plaintiff appears to contend that Officer Schortman violated his equal protection rights either by insulting him with racial slurs or by subjecting him to adverse action motivated by racial animus, as evidenced by Officer Schortman's alleged use of racial slurs.  *See* Compl. at 7, 9–10.  Whichever the case, Plaintiff has not pleaded a cognizable equal protection claim.  In his complaint, Plaintiff does not endeavor to compare his treatment to that of other similarly situated inmates.  This precludes him from establishing an equal protection violation.  *See Rasheen v. Adner*, 356 F. Supp. 3d 222, 242 (N.D.N.Y. 2019) (dismissing equal protection claim because the plaintiff failed to allege any facts suggesting how he was treated differently than any similarly situated inmate).  Nor has Plaintiff adequately pleaded claims under the selective enforcement or class-of-one theories of equal protection.  *See Salaam v. Stock*, No. 9:19-cv-689 (AMN/TWD), 2023 WL 3579770, at *3 (N.D.N.Y. May 22, 2023) (describing additional equal protection theories).

(6)     Next, Plaintiff's claims against Officer Schortman for alleged violations of state criminal statutes are incognizable because criminal statutes do not, as a general matter, create

---

[4] To the extent Plaintiff attempts to plead a Fourteenth Amendment deliberate indifference claim, this claim suffers from the same deficiencies as Plaintiff's Eighth Amendment claims.  Moreover, even if Plaintiff had pleaded a cognizable Fourteenth Amendment deliberate indifference claim, that claim would nevertheless be subsumed by an Eighth Amendment cause of action. *See Felix-Tores v. Graham*, 521 F. Supp. 2d 157, 164 (N.D.N.Y. 2007) ("Since the Eighth Amendment offers greater protection to prisoners, [a] Fourteenth Amendment claim is subsumed.").

private causes of action. *See generally Ward v. Housatonic Area Reg'l Transit Dist.*, 154 F. Supp. 2d 339, 358 (D. Conn. 2001). The two criminal statutes cited by Plaintiff in the complaint—Conn. Gen. Stat. § 53a-180 (falsely reporting an incident in the first degree) and Conn. Gen. Stat. § 53a-320 (defining terms for abuse of an elderly or disabled person offenses)—are not exceptions to this general rule.

(7)     Plaintiff also purports to bring claims through the following state civil statutes: Conn. Gen. Stat. § 18-81, Conn. Gen. Stat. § 18-84, Conn. Gen. Stat. § 46a-51, Conn. Gen. Stat. § 46a-63(2), Conn. Gen. Stat. § 46a-71, and Conn. Gen. Stat. § 46a-77. Compl. at 8. Of these claims, only the claims Plaintiff brings under Conn. Gen. Stat. §§ 46a-71 and 46a-77 against Officer Schortman in his official capacity may proceed.

First, Conn. Gen. Stat. § 18-84, Conn. Gen. Stat. § 46a-51, and Conn. Gen. Stat. § 46a-63 simply define statutory terms. Because they confer no private cause of action, Plaintiff's claims for alleged violations of those statutes are not cognizable.

Second, Conn. Gen. Stat. § 18-81 defines the duties of the Commissioner of Correction. The statute does not appear to confer any private cause of action should the Commissioner fail to perform his or her duties. And the Commissioner is not, in any event, named as a party to this action. Thus, Plaintiff's claim asserting a violation of Conn. Gen. Stat. § 18-81 is not cognizable.

Third, Conn. Gen. Stat. § 46a-71 generally prohibits state agencies from discriminating against persons on the basis of certain protected statuses (including physical disability). And, in a similar vein, Conn. Gen. Stat. § 46a-77 requires state agencies to comply with the ADA. Pursuant to Conn. Gen. Stat. § 46a-99, a person aggrieved by a violation of sections 46a-71 or 46a-77, "may petition the Superior Court [of Connecticut] for appropriate relief and said court shall have the power to grant such relief, by injunction or otherwise, as it deems just and suitable." *Id.* Here,

Plaintiff does not seek an injunction and, instead, exclusively requests punitive and compensatory monetary damages, Compl. at 6, which raises the question of whether Plaintiff's claims alleging violations of sections 46a-71 and 46a-77 would be barred under sovereign or statutory immunity, *see Gawlik v. Semple*, No. 3:20-cv-564 (SRU), 2021 WL 4430601, at *17 (D. Conn. Sept. 17, 2021) (raising the possibility that the plaintiff's claims under section 46a-99 might be barred by sovereign or statutory immunity). In any event, because section 46a-99 creates a private cause of action against the State of Connecticut, *see Paschal-Barros v. Quiros*, No. 3:21-cv-698 (SALM), 2022 WL 124544, at *10 (D. Conn. Jan. 13, 2022), the Court will permit Plaintiff's claims alleging violations of sections 46a-71 and 46a-77 to proceed for purposes of initial review. Should Officer Schortman believe that these claims are barred by sovereign or statutory immunity principles, he is encouraged to raise the issue through the filing of a motion to dismiss.

Plaintiff's claims asserting violations of Conn. Gen. Stat. §§ 46a-71 and 46a-77 shall proceed against Officer Schortman in his official capacity only. These claims shall proceed on a theory of liability mirroring Plaintiff's ADA/Rehabilitation Act claim. *See Paschal-Barros*, 2022 WL 124544, at *11 ("Because § 46a-77(c) requires compliance with the ADA, the same analysis applies to this state law claim as applied to plaintiff's ADA claim.").

(8)     Next, the Court will permit Plaintiff's state law defamation claim to proceed past initial review. "To establish a *prima facie* case of defamation, the plaintiff must demonstrate that: (1) the defendant published a defamatory statement; (2) the defamatory statement identified the plaintiff to a third person; (3) the defamatory statement was published to a third person; and (4) the plaintiff's reputation suffered injury as a result of the statement." *Skakel v. Grace*, 5 F. Supp. 3d 199, 206 (D. Conn. 2014) (italicization added). Plaintiff appears to argue that false accusations of assault are *per se* defamatory. Compl. at 9. To be actionable *per se*, the defamation must

involve a statement that charges a crime involving moral turpitude or which is punishable by imprisonment.  *See Skakel*, 5 F. Supp. 3d at 206; *Gleason v. Smolinski*, 125 A.3d 920, 950 (Conn. 2015).  In such a case, "injury to a plaintiff's reputation is conclusively presumed such that the plaintiff need neither plead nor prove it."  *Skakel*, 5 F. Supp. 3d at 207.  Criminal assault is punishable by imprisonment in Connecticut.  *See* Conn. Gen. Stat. § 53a-61(b) ("Assault in the third degree is a class A misdemeanor and any person found guilty under subdivision (3) of subsection (a) of this section shall be sentenced to a term of imprisonment of one year which may not be suspended or reduced.").  Thus, injury to Plaintiff's reputation from the allegedly false accusation of assault is presumed.  He has also adequately pleaded the other elements of a defamation claim, for purposes of initial review.  *See Skakel*, 5 F. Supp. 3d at 206.

In sum, the Court will permit Plaintiff to proceed with the following claims against Officer Schortman:  (1) a First Amendment retaliation claim against Officer Schortman in his individual capacity; (2) ADA, Rehabilitation Act, Conn. Gen. Stat. § 46a-71, and Conn. Gen. Stat. § 46a-77 claims against Officer Schortman in his official capacity; and (3) a state law defamation claim against Officer Schortman in his individual capacity.

B.  <u>Claims Against Officer Harris</u>

The Court construes the complaint to bring the following three claims against Officer Harris:  (1) a state law defamation claim; (2) a due process claim for filing a false disciplinary report; and (3) a procedural due process claim related to Plaintiff's inability to present video evidence during his disciplinary hearing and the absence of Plaintiff's advisor during that hearing. Compl. at 9–10.

(1)     Plaintiff's state law defamation claim against Officer Harris, which is premised on Officer Harris accusing Plaintiff of assault, can proceed past initial review for the same reasons his defamation claim against Officer Schortman is proceeding.

(2)     As to Plaintiff's due process claim regarding the filing of a false disciplinary report, inmates generally have "no constitutionally guaranteed immunity from being falsely or wrongly accused of conduct which may result in the deprivation of a protected liberty interest." *Willey*, 801 F.3d at 63 (internal quotation marks and citation omitted).  There are two exceptions to this rule, however:  (1) when the inmate can show that he was disciplined without adequate due process as a result of the report; or (2) when the inmate can show that the report was issued in retaliation for exercising a constitutionally protected right.  *Id.*  As Plaintiff has alleged that the disciplinary report was issued, at least tangentially, in retaliation for his filing suit against other correctional officers, his due process claim relating to the issuance of the allegedly false disciplinary report can proceed past initial review.

(3)     As to Plaintiff's procedural due process claim against Officer Harris, "[i]t is well-established that inmates have the right not to be deprived of a liberty interest without due process, and that inmates have due process rights in prison disciplinary hearings." *Brooks v. Prack*, 77 F. Supp. 3d 301, 314 (W.D.N.Y. 2014).  To successfully state a claim for denial of procedural due process arising out of a disciplinary hearing, a plaintiff must show that he possessed a liberty or property interest and was deprived of that interest without being afforded sufficient procedural safeguards.  *Mandell v. Goord*, No. 9:06-cv-1478 (GTS/DEB), 2009 WL 3123029, at *14 (N.D.N.Y. Sept. 29, 2009) (citing *Tellier v. Fields*, 260 F.3d 69, 79–80 (2d Cir. 2000)); *Brooks*, 77 F. Supp. 3d at 314.  A prison disciplinary hearing implicates a protected liberty/property interest if it "imposes [an] atypical and significant hardship on the inmate in relation to the ordinary

incidents of prison life." *Palmer v. Richards*, 364 F.3d 60, 64 (2d Cir. 2004) (quoting *Sandin v. Conner*, 515 U.S. 472, 484 (1995)); *see id.* (noting that the plaintiff "had 'no right to due process [at his hearing] unless a liberty interest' was infringed as a result" (alteration in original)). While inmates do not have the "full panoply of rights" afforded to a criminal defendant, *Brooks*, 77 F. Supp. 3d at 314, if a prison disciplinary hearing implicates a liberty or property interest, prison authorities must provide the inmate charged with a violation with:  advance written notice of the charges against him; a hearing affording him a reasonable opportunity to call witnesses and present documentary evidence; a fair and impartial hearing officer; and a written statement of the disposition, including the evidence relied upon and the reasons for the disciplinary actions taken, *id.*; *Sira v. Morton*, 380 F.3d 57, 69 (2d Cir. 2004).  In addition, the Second Circuit has held that prison authorities "have a constitutional obligation to provide assistance to an inmate in marshaling evidence and presenting a defense when he is faced with disciplinary charges." *Eng v. Coughlin*, 858 F.2d 889, 897 (2d Cir. 1988); *see also Pilgrim v. Luther*, 571 F.3d 201, 206 (2d Cir. 2009).

Although Plaintiff has alleged facts concerning the supposed deficiencies in his disciplinary hearing process, such as the absence of his advisor and the inability to present the video evidence of the incident in question, the Court cannot locate in Plaintiff's complaint or his exhibits any information as to what punishment Plaintiff received for his alleged assault.  Without such information, the Court is without a basis to determine whether the punishment imposed on Plaintiff at the hearing posed an atypical and significant hardship on Plaintiff in relation to the ordinary incidents of prison life, such that it can find Plaintiff had a protected liberty or property interest of which he could only be deprived with due process.  Therefore, Plaintiff's procedural due process claim cannot proceed past initial review at this time.

### C.  Claims Against Lieutenant Davis

The Court construes the complaint to allege two claims against Lieutenant Davis:  (1) a claim that Davis violated Plaintiff's procedural due process rights by holding a disciplinary hearing without an advocate to assist Plaintiff's defense and by not permitting Plaintiff to admit allegedly exculpatory video evidence at his disciplinary hearing; and (2) a First Amendment retaliation claim, in connection with Davis ordering Harris to write Plaintiff a ticket for making a threat after Plaintiff told Davis he would sue him in connection with the disciplinary hearing process.

First, Plaintiff's procedural due process claim against Lieutenant Davis cannot proceed past initial review for the same reason described above with respect to Officer Harris.

The First Amendment retaliation claim, however, may proceed, as Plaintiff adequately alleges, for purposes of initial review, that Davis retaliated against Plaintiff when Plaintiff threatened to sue him.

### D.  Claims Against District Administrator Guadarrama

The Court construes the complaint to bring supervisory liability and procedural due process claims against District Administrator Gaudarrama.  Compl. at 10.

Plaintiff's supervisory liability claim fails because Plaintiff seeks to hold Gaudarrama vicariously liable for constitutional torts allegedly committed by Officer Harris and Lieutenant Davis.  Government officials, however, "may not be held liable for the unconstitutional conduct of their subordinates under a theory of *respondeat superior*."  *Iqbal*, 556 U.S. at 676; *see also Tangreti v. Bachmann*, 983 F.3d 609, 618 (2d Cir. 2020) ("The violation must be established against the supervisory official directly.").  Thus, Plaintiff's supervisory liability claim against Gaudarrama cannot proceed.

Plaintiff's procedural due process claim against Gaudarrama pertains to Gaudarrama's denial of Plaintiff's disciplinary hearing appeal.  As has been noted, Plaintiff has not pleaded sufficient facts showing a deprivation of a protected liberty or property interest that would give rise to a procedural due process claim.  Thus, this claim likewise is not cognizable on the present record.

### IV.    CONCLUSION

The Court enters the following orders:

(1)    Plaintiff may **PROCEED** with his First Amendment retaliation and state law defamation claims against Officer Schortman in his individual capacity.  Plaintiff may also **PROCEED** with his ADA/Rehabilitation Act, Conn. Gen. Stat. § 46a-71, and Conn. Gen. Stat. § 46a-77 claims against Officer Schortman in his official capacity.

(2)    Plaintiff may **PROCEED** with his state law defamation claim and his due process claim based on issuance of a false disciplinary report against Officer Harris in his individual capacity.

(3)    Plaintiff may **PROCEED** with his First Amendment retaliation claim against Lieutenant Davis in his individual capacity.

(4)    All other claims that Plaintiff sought to bring through the complaint are **DISMISSED without prejudice** pursuant to 28 U.S.C. § 1915A(b)(1).

Plaintiff has two options as to how to proceed in response to this Initial Review Order:

(1)    If Plaintiff wishes to proceed immediately **only** on the claims set forth in items one through three above against Defendants Schortman, Harris, and Davis, he may do so without further delay.  If Plaintiff selects this option, he shall file a notice on the docket on or before **July 24, 2023**, informing the Court that he elects

to proceed with service as to the claims set forth in this paragraph.  The Court will then begin the effort to serve process on Defendants Schortman, Harris, and Davis in the capacities described above.

(2)     Alternatively, if Plaintiff wishes to attempt to replead any of the claims asserted in his complaint that have been dismissed in order to attempt to state a viable claim, he may file an amended complaint by **July 24, 2023**.  An amended complaint, if filed, will completely replace the complaint, and the Court will not consider any allegations made in the original complaint in evaluating any amended complaint.  The Court will review any amended complaint after filing to determine whether it may proceed to service of process on any defendants named therein.  If Plaintiff elects to file an amended complaint, the complaint this Initial Review Order addresses will **not** proceed to service of process on any defendant.

If the Court receives no response from Plaintiff by **July 24, 2023**, the Court will presume that Plaintiff wishes to proceed on the complaint as to the claims permitted to go forward in this Initial Review Order, and Plaintiff will have to show good cause if he seeks to amend the complaint in any manner in the future.

**Changes of Address.**  If Plaintiff changes his address at any time during the litigation of this case, Local Rule 83.1(c)2 provides that he **MUST** notify the Court.  Failure to do so can result in the dismissal of the case.  Plaintiff must give notice of a new address even if he is incarcerated.  Plaintiff should write PLEASE NOTE MY NEW ADDRESS on the notice.  It is not enough to just put the new address on a letter without indicating that it is a new address.  If Plaintiff has more

than one pending case, he should indicate all the case numbers in the notification of change of address.  Plaintiff should also notify Defendants or counsel for Defendants of his new address.

      **SO ORDERED** at Hartford, Connecticut, this 23rd day of June, 2023.

                           */s/ Sarala V. Nagala*
                           SARALA V. NAGALA
                           United States District Judge